IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DANIEL W. MADISON and DONALD G. MADISON, | ) ) ) | |
| Plaintiffs, | ) | CASE NO. : 2:06CV- 199-WKW |
| V. | ) ) | |
| ALABAMA DEPARTMENT OF TRANSPORTATION, | ) ) ) | |
| Defendant. | ) | |

**REPLY BRIEF TO DEFENDANT'S BRIEF
IN OPPOSITION TO REMOVAL**

COME NOW the Plaintiffs and, pursuant to this Court's Order dated April 16, 2006,

file this Reply Brief to Defendant's Brief in Opposition to Removal.  In support hereof, the

Plaintiffs respectfully submit the following in support of remand.

**I.      REMAND STANDARD**

"REMAND STANDARD

"It is well-settled that a defendant, as the party removing an action to federal
court, has the burden to establish federal jurisdiction. *See Diaz v. Sheppard*,
85 F.3d 1502, 1505 (11th Cir.1996).  Removal statutes must be strictly
construed because of the significant federalism concerns raised by removal
jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941);
*Seroyer v. Pfizer, Inc.*, 991 F.Supp.1308, 1312 (M.D.Ala. 1997).  "All doubts
[and uncertainties] about federal court jurisdiction must be resolved in favor
of a remand to state court." *Seroyer*, 991 F.Supp. At 1312 (citing *Burns v.
Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994))"

## II.      FEDERAL QUESTION JURISDICTION

Federal question jurisdiction exists if a case "arises under 'the' Constitution, treaties or laws of the United States". 28 U.S.C. § 1331. A case arises under federal law if federal law creates the cause of action, or if a substantial disputed issue of federal law is a necessary element of a state law claim. See Franchise Tax Bd. V. Construction Laborers Vacation Trust, 463 U.S. 1, 9-10, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The determination of whether federal question exists must be made on the face of the plaintiff's(s) well pleaded complaint; an anticipated or even inevitable federal defense generally will not support removal based upon federal question jurisdiction.[1] See Caterpillar, Inc., v. Williams, 482 U.S. 386, 392-93, 107 S.Ct. 2425, 96 L.Ed. 318 (1987).

The United States Supreme Court held in Grable & Sons Metal Products v. Darue Engineering & Manufacturing, —U.S.— , 125 S.Ct. 2363, 2364, 162 L.Ed. 2d 257 (2005), that:

> "Federal question jurisdiction is usually created by federal law, but this court has also long recognized that such jurisdiction will be over some state law claims that implicate significant federal issues, see e.g. Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577. Such federal jurisdiction demands not only a contested federal issue, but a substantial one. And the jurisdiction must be consistent with congressional judgment about the sound division between state and federal courts governing § 1331's application."

More recently, the United States District Court, Middle District Alabama, Northern

---

[1] The plaintiffs have not filed a well-pleaded complaint in state or federal court, only a notice of appeal from a state administrative hearing.

Division, applied the Supreme Court's rationale of <u>Grable</u>, in <u>Smith v. American International Group, Inc</u>., 2006 WL 319180 (M.D. Ala., Feb. 10, 2006). The District Court noted in part that:

> "In fact, in previous decisions the Court has made it clear that the 'mere presence' of a federal issue does not automatically confer federal-question jurisdiction. <u>Merrill Dow Pharmacy, inc., v. Thompson</u>, 478 U.S. 804, 813, 106 S.Ct. 32239, 92 L.Ed. 2d 650 (1985). Instead, the Court held that the dispositive questions is does "a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal court may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."

The District Court considered the Defendant's argument that the issue of Defendant's compliance with the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et. Seq., and Regulation 2, promulgated thereunder, 12 C.F.R. § 226.1, et seq, and 12 C.F.R. § 590.01 was "sure to be disputed". In holding that the plaintiffs had raised no such issue in its state claims, the District concluded that the case was not within the meaning of <u>Grable</u>, or subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331.

This holding is consistent with the Supreme Court's consideration and discussion of Merrill Dow in the <u>Grable</u> case. The Court noted:

> "There, in finding federal jurisdiction unavailable for a state tort claim resting in part on an allegation that the defendant drug company had violated a state law claim resting in part on an allegation that the defendant drug company had violated a federal branding law, the Court noted that congress had not provided a private cause of action as a necessary condition for federal question jurisdiction."
> <u>Grable</u> at 2365.

The Supreme Court further noted that:

"In Merrill Dow, the principle significance of this absence was its bearing on the consequences to the federal system. If the federal labeling standard without a cause of action could get a state claim into federal court, so could any other federal standards without a cause of action. And that would mean an enormous number of cases."

There are no provisions under 42 U.S.C. § 4622 providing a private cause of action. This case involves a relocation payment determination made by a state agency (ADOT) under state law which has been addressed previously by the Supreme Court of Alabama at a minimum in Avery v. Marengo County Commission, 646 So.2d 1347 (Ala. 1994). The rule that applies to this case was stated a quarter of a century ago in Chicago, R.I., & P.R. Co. v. Stude, 346 U.S. 574, 581, 74 S.Ct 290, 98 L.Ed. 317 (1954), wherein the Supreme Court held:

"The United States District Court ... does not sit to review on appeal action taken administratively or in a state proceeding ... 974. The Iowa Code does not purport to authorize such an appeal, Congress has provided none by statute, and the *Federal Rules of Procedure* make no such provision."

The proceedings before ADOT were grounded on § 18-4-1 through 18-4-17, et. seq, 1975 Code of Alabama, as Amended. Although this state legislation is similar to the federal act and was enacted in response to 42 U.S.C. 4622, it is nonetheless still a state law. The federal act encourages states to make appropriate relocation payments under their own laws by conditioning the availability of the federal funds on the provision of such payments. Ibid.

Section 18-1A-70, Alabama Code, 1975 (Acts 1985, No. 85-548 § 401) adopting the Uniform Eminent Domain Code provides:

"The procedure for condemnation of property under the power of eminent domain is

governed by the *Alabama Rules of Civil Procedure*". Section 18-1A-2(a) states that "[t]his chapter provides standards for ... the conduct of condemnation actions," and subsection (b) states that "[i]n the event of conflict between this chapter and any other law with respect to any subject governed by this chapter, this chapter prevails."

The specific State law code sections dealing with relocation assistance are Title 18-4-1 through 18-4-17 1975 Code of Alabama, as Amended. A copy of which is attached hereto as Exhibit A. Additionally, ADOT provides brochures on relocation assistance in condemnation action which represents available relocation costs. The claims advanced by Plaintiffs involve the State's refusal to pay the items a displaced person is entitled to receive under the pertinent provisions of Title 18-4-1 through Title 18-4-17, 1975 Code of Alabama, as Amended, and/or as provided by the published brochure pertaining to reimbursable re-location issues, a copy of which is attached hereto as Exhibit B. The denial of reimbursable costs to Plaintiff' appeal are provided for in the relevant portions of the brochure hereinafter stated or in the corresponding State law section to each item listed in Plaintiffs' Notice of Appeal in (a) through (i) are as follows:

    a)    Rental for Storage: Part 2, Section B, DOT *Relocation Assistance Brochure* the applicable pages of which are attached hereto as Exhibit B;

    b)    up to $22,500.00 payment - Title 18-4-5;

    c)    costs relating to relocation (utility re-connection, surveys, etc.) Title 18-4-15 plus Section B DOT brochure. "Non-Residential Moves", Section 1 - Section E, Re-Establishment Expenses;

d) See c) above;

e) reimbursable under <u>Avery v. Marengo County Commission</u>, 646 So.2d 1347 (Ala. 1994);

f) DOT brochure - Part IV - Incidental Expenses - Reimbursable Expenses;

g) Title 18-4-17;

(h.) DOT brochure, Section B, pp. 4, 5 and "Non-Residential Moves", page 6.

Therefore, the issues raised in the appeal involve the denial of State law eligible payments under a federally funded project. Plaintiffs' claims are advanced solely under a State administrative appeal of the denial of the State law provided for payments/benefits.

## III. THE COSTS PLAINTIFFS SEEK HAVE BEEN HERETOFORE ACKNOWLEDGED AS AWARDABLE BY THE ALABAMA SUPREME COURT

The relocation costs Plaintiffs seek have been previously addressed by the Supreme Court of Alabama in <u>Avery v. Marengo County Commission</u>, 646 So.2d 1347, 1351 (Ala. 1994), a copy of which is attached hereto as Exhibit C. The Court construed the Relocation Assistance Act in summarizing the eligible payments recognized by the uniform acts being payable in condemnation cases involving federal funds in Alabama. The Supreme Court held in <u>Avery</u>, <i>i.d.</i> as follows:

"The Act was enacted to establish "a uniform policy for the fair and equitable treatment of persons displaced as a **direct result of programs or projects undertaken by a Federal agency or with Federal financial assistance**." 42 U.S.C. § 4621(b). It mandates that whenever the acquisition of real property for a program or project undertaken by a Federal agency will result in the

displacement of any person, the head of the displacing agency shall reimburse any displaced person for: 1) actual reasonable expenses in moving himself, his family, **his business**, or other personal property; 2) **actual direct losses of tangible personal property** resulting from the move or discontinuation of business; 3) actual, reasonable **expenses in searching for a replacement business**; and 4) **actual reasonable expenses necessary to reestablish a displaced small business at its new site**. § 4622(a). **A "displaced person" under the Act is a person who moves from real property, or moves his personal property from real property, as a result of the acquisition of real property for a program or project undertaken by a Federal agency or with Federal financial assistance**. § 4601(6)(A)(i)(I)."
Avery v. Marengo County Com'n, 646 So.2d 1347, 1351 (Ala. 1994).

Therefore, the costs Plaintiffs seek have been acknowledged as reimbursable by the

Alabama Supreme Court in State Court.

## IV.    TITLE 41-22-20 REQUIRES APPEALS OF ADMINISTRATIVE RULINGS TO BE FILED IN CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA, TO EXHAUST ADMINISTRATIVE REMEDIES IN STATE ADMINISTRATIVE LAW CITES.

The Plaintiffs filed their appeal in the Circuit Court of Montgomery County, Alabama,

in accordance with the Alabama Administrative Procedures Act, Title 41-22-20, which states:

**"§ 41-22-20.  Contested cases; judicial review.**

(a) A person who has exhausted all administrative remedies available within the agency, other than rehearing, and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter. A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy.

(b) All proceedings for review may be instituted by filing of notice of appeal or review and a cost bond with the agency to cover the reasonable costs of preparing the transcript of the proceeding under review, unless waived by the agency or the court on a showing of substantial hardship.  A petition shall be filed either in the Circuit Court of Montgomery County or in the circuit

7

court of the county in which the agency maintains its headquarters, or unless otherwise specifically provided by statute, in the circuit court of the county where a party other than an intervenor, resides or if a party, other than an intervenor, is a corporation, domestic or foreign, having a registered office or business office in this state, then in the county of the registered office of principal place of business within this state."...

<u>Code of Alabama 1975, as Amended</u>, Title 41-22-20(a)(b).

Therefore, the filing in State court was appropriate.

Lastly, the eminent domain statute provides for "just compensation" in private condemnation actions. Section 18-3-2, <u>Alabama Code, 1975</u>. Plaintiffs currently have pending in the Montgomery County Circuit Court a trial date set for September 11, 2006, to hear Plaintiffs' appeal of the fair market value assessment of the property (an action separate and apart from this relocation, being Case Number CV-04-2963. If this Court does not remand this case to the State Courts, the Plaintiffs will be forced to prosecute parallel actions in the State and Federal Courts. The State's actions in denying said relocation costs directly impact the offered award by diminishing the already low price of the State's offer which is the subject of the appeal to the Circuit Court. Judicial economy and avoidance of multiplicity of actions would favor consolidation of this case with the pending State Circuit Court in Montgomery County Circuit Court Case Number CV-04-2963 EWR

WHEREFORE, THE PREMISES CONSIDERED, based on the above and foregoing, Plaintiffs, jointly and severally, pray that the attempted removal by Defendants be denied, and that this case be remanded to State Court.

Respectfully submitted,


___S/ Donald G. Madison
DONALD G. MADISON, PRO SE
418 Scott Street
Montgomery, Alabama 36104
Telephone (334) 263-4800
Facsimile  (334) 265-8511
E-mail: btjarvis1@bellsouth.net



S/ Daniel W. Madison
DANIEL W. MADISON, PRO SE

OF COUNSEL:
Donald G. Madison, Pro Se
Daniel W. Madison, Pro Se
418 Scott Street
Montgomery, Alabama 36104
Telephone (334) 263-4800
Facsimile  (334) 265-8511


## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Honorable Jim R. Ippolito, Jr. and Honorable Jason A. Trippe, Assistant Attorneys General, as well as depositing a copy of the same in the United States mail, postage prepaid, to their address of State of Alabama Department of Transportation, 1409 Coliseum Boulevard, Montgomery Alabama 36110 on this the 15th day of May, 2006.

 S/ Donald G. Madison
DONALD G. MADISON, PRO SE
418 Scott Street
Montgomery, Alabama 36104
Telephone (334) 263-4800
Facsimile  (334) 265-8511
E-mail: btjarvis1@bellsouth.net

9

§ 18-3-3                    EMINENT DOMAIN                    § 18-4-

not whether the right-of-way the plaintiff seeks is, of three possible routes, the nearest and most convenient means of access to her property or even the relative burdens of the parties; rather, the plaintiff must show that for her to gain access by alternate means, i.e. building a bridge or repairing an old road, would be cost-prohibitive, that is, an unreasonable expense disproportionate to the value of her property. Ex parte Cater, 772 So. 2d 1117 (Ala. 2000).

**Evidence — Insufficient.**
The plaintiff failed to carry her burden of

proof so as to entitle her to a right-of-way across the defendant's property, under this section, where the record contained no evidence indicating that the cost of building a bridge across a creek, or of improving the old road formerly used by her father, would be prohibitive in proportion to the value of her property. Ex parte Cater, 772 So. 2d 1117 (Ala. 2000).

**Cited in** Williams v. Deerman, 724 So. 2d 18 (Ala. Civ. App. 1998); Paulk v. McCarty, 855 So. 2d 1123 (Ala. Civ. App. 2003).

## § 18-3-3. Right-of-way; application.

**Cited in** Williams v. Deerman, 724 So. 2d 18 (Ala. Civ. App. 1998).

## CHAPTER 4

## RELOCATION ASSISTANCE AND REAL PROPERTY ACQUISITION

Sec.
18-4-1. Short title.
18-4-2. Definitions.
18-4-3. Applicability.
18-4-4. Relocation payments.
18-4-5. Additional payments.
18-4-6. Payments to certain other dispaced persons.
18-4-7. Planning.
18-4-8. Contracts.
18-4-9. Appropriations.
18-4-10. Federal projects.
18-4-11. Payments not defined as income.

Sec.
18-4-12. Project funds to be used for relocation purposes.
18-4-13. Adjustments.
18-4-14. Procedures for acquiring property.
18-4-15. Reimbursement of fees; acquired property.
18-4-16. Reimbursement of costs; abandoned proceedings.
18-4-17. Reimbursement of costs; declaratory judgment.
18-4-18. Acquisition in structures upon real property.
18-4-19. Rules and regulations.

## § 18-4-1. Short title.

This chapter may be cited as the Alabama Relocation Assistance and Real Property Acquisition Policies Act of 1999.

**History.** Acts 1999, No. 99-582.
**Alabama Law Review.** — Survey of 1999

Alabama Legislation. 51 Ala. L. Rev. 907 (2000).

## § 18-4-2. Definitions.

As used in this chapter, the following terms shall have the following meanings:

(1) COMPARABLE REPLACEMENT DWELLING. Any dwelling that is decent, safe, and sanitary; adequate in size to accommodate the occupants; within the financial means of the displaced person; functionally equivalent; in an area not subject to unreasonable adverse environmental conditions; and in a location generally not less desirable than the location of the dwelling of a

---

18-4-3   RELOCATION ASSISTAN

displaced person with respec
place of employment of a dis

(2) DISPLACED PERSON.
   a. Any person who move
or her personal property fr
of a written notice of in
property, in whole or in pa
state agency, or other dis
scribe, under a program o
case in which the state
permanent.
   b. The term "displaced
determined, according to
either in unlawful occup
occupied the dwelling for
chapter, or in any case
program or project, any p
of the property at the tim
a rental basis for a short
property is needed for th
(3) MORTGAGE. The class
advances on, or the unpaid
credit instruments, if any,
(4) PERSON. An individua
(5) STATE AGENCY. Any p
division or unit, bureau,
college or university, or ot
legislative, or judicial, w
eminent domain under sta
or state financial assistanc
include any unit of local g

**History.** Acts 1999, No. 99-582.

## § 18-4-3. Applicability.

(a) The Legislature decla
acquisition of real property
any state agency for use in
are used; except that for
insurance shall not be dee
to acquisitions by a state
by the seller under no th
   (b) The Legislature fu
   (1) The purpose of th
and equitable treatm
result of programs or


PLAINTIFF'S
EXHIBIT
A
tabbies

displaced person with respect to public utilities, facilities, services, and the place of employment of a displaced person.

(2) DISPLACED PERSON.

a. Any person who moves from a dwelling on real property or moves his or her personal property from a dwelling on real property as a direct result of a written notice of intent to acquire or the acquisition of the real property, in whole or in part, for any program or project undertaken by a state agency, or other displacing activity as the state agency may prescribe, under a program or project undertaken by the state agency in any case in which the state agency determines that the displacement is permanent.

b. The term "displaced person" does not include a person who has been determined, according to criteria established by the state agency, to be either in unlawful occupancy of the displacement dwelling or to have occupied the dwelling for the purpose of obtaining assistance under this chapter, or in any case which the state agency acquires property for a program or project, any person, other than a person who was an occupant of the property at the time it was acquired, who occupies the property on a rental basis for a short term or a period subject to termination when the property is needed for the program or project.

(3) MORTGAGE. The classes of liens as are commonly given to secure advances on, or the unpaid purchase price of, real property, together with the credit instruments, if any, secured by the mortgage.

(4) PERSON. An individual, partnership, corporation, or association.

(5) STATE AGENCY. Any permanent or temporary state office, department, division or unit, bureau, board, commission, authority, institution, state college or university, or other unit of state government, whether executive, legislative, or judicial, which has the authority to acquire property by eminent domain under state law and which carries out projects with federal or state financial assistance that cause people to be displaced, but shall not include any unit of local government.

History. Acts 1999, No. 99-582.

§ 18-4-3. Applicability.

(a) The Legislature declares that this chapter shall be applicable only to the acquisition of real property owned and occupied by the owner as a residence by any state agency for use in projects or programs in which federal or state funds are used; except that for the purposes of this chapter, federal guarantees or insurance shall not be deemed to be federal funds. This chapter shall not apply to acquisitions by a state agency which are voluntarily initiated or negotiated by the seller under no threat of condemnation.

(b) The Legislature further declares the following:

(1) The purpose of this chapter is to establish a uniform policy for the fair and equitable treatment of persons displaced from their residences as a result of programs or projects involving the acquisition of real property by

11

any state agency. In order that the persons shall not suffer disproportionate injuries as a result of programs designed for the benefit of the public as a whole, the policy shall be uniform as to relocation payments, advisory assistance, and assurances of availability of housing.

(2) It shall be the policy of the state to encourage and expedite the acquisition of real property by agreements with owners, to avoid litigation and relieve congestion in the courts, to assure consistent treatment for owners in the many programs, and to promote public confidence in land acquisition practices.

History. Acts 1999, No. 99-582.

### § 18-4-4. Relocation payments.

(a) Whenever the acquisition of real property for a program or project undertaken by a state agency will result in the displacement of any person, the agency shall make fair and reasonable relocation payments to displaced persons as required by this chapter for the actual reasonable expenses in moving himself or herself or his or her family or personal property.

(b) This chapter shall not apply to the Alabama Department of Transportation if the department is required to provide relocation assistance pursuant to Sections 23-1-210, 23-1-211, and 23-1-212.

History. Acts 1999, No. 99-582.

### § 18-4-5. Additional payments.

(a) In addition to payments otherwise authorized by this chapter, the state agency shall make an additional payment not in excess of twenty-two thousand five hundred dollars ($22,500) to any displaced person who is displaced from a dwelling actually owned and occupied by the displaced person for not less than 180 days prior to the initiation of negotiations for the acquisition of the property. The additional payment shall include the following:

(1) The amount, if any, which, when added to the acquisition cost of the dwelling acquired by the state agency, equals the reasonable cost of a comparable replacement dwelling.

(2) The amount, if any, which will compensate a displaced person for any increased interest costs and other debt service costs which the displaced person is required to pay for financing the acquisition of any comparable replacement dwelling. The amount for any increased interest or debt service costs shall be determined in accordance with the criteria established by the state agency. The amount shall be paid only if the dwelling acquired by the state agency was encumbered by a bona fide mortgage which was a valid lien on the dwelling for not less than 180 days immediately prior to the initiation of negotiations for the acquisition of the dwelling.

(3) Reasonable expenses incurred by the displaced person for evidence of title, recording fees, and other closing costs incident to the purchase of the replacement dwelling, but not including prepaid expenses.

(b) The additional payment authorized by subsection (a) shall be made only to a displaced person who purchases and occupies a replacement dwelling which is decent, safe, and sanitary not later than the end of the one-year period beginning on the date on which he or she receives final payment of all costs for the acquired dwelling, or the date on which the state agency obligation under Section 18-4-12 is met, whichever is the later date, except that the state agency may extend the period for good cause. If the period is extended, the payment under this section shall be based on the cost of relocating the person to a comparable replacement dwelling within one year of the date.

History. Acts 1999, No. 99-582.

## § 18-4-6. Payments to certain other dispaced persons.

(a) In addition to amounts otherwise authorized by this chapter, a state agency shall make a payment to or for any displaced person displaced from any dwelling not eligible to receive a payment under Section 18-4-5 which dwelling was actually and lawfully occupied by the displaced person for not less than 90 days immediately prior to the initiation of negotiations for acquisitions of the dwelling, or in any case in which displacement is not a direct result of acquisition, or other event as the agency shall prescribe. The payment shall consist of the amount necessary to enable a displaced person to lease or rent, for a period not to exceed 42 months, a comparable replacement dwelling, but not to exceed five thousand two hundred fifty dollars ($5,250).

(b) Any displaced person eligible for a payment under subsection (a) may elect to apply the payment to a down payment on, and other incidental expenses pursuant to, the purchase of a decent, safe, and sanitary replacement dwelling. Any person may, at the discretion of the state agency, be eligible under this subsection for the maximum payment allowed under subsection (a) except that in the case of a displaced homeowner who has owned and occupied the displacement dwelling for at least 90 days but not more than 180 days immediately prior to the initiation of negotiations for the acquisition of the dwelling, the payment shall not exceed the payment the person would otherwise have received under Section 18-4-5 had the person owned and occupied the displacement dwelling 180 days immediately prior to the initiation of the negotiations.

History. Acts 1999, No. 99-582.

## § 18-4-7. Planning.

(a) Programs or projects undertaken by a state agency shall be planned in a manner that recognizes, at an early stage in the planning of the programs or projects and before the commencement of any actions which will cause displacements, and provides for the resolution of the problems in order to minimize adverse impacts on displaced persons and to expedite program or project advancement and completion.

(b) The agency shall ensure that the relocation assistance advisory services described in subsection (c) are made available to all persons displaced by the agency. If the state agency determines that any person occupying property immediately adjacent to the real property acquired is caused substantial economic injury because of the acquisition, it may offer the person relocation advisory services under the program.

(c) Each relocation assistance advisory program required by subsections (a) and (b) shall include measures, facilities, or services necessary or appropriate in order to do the following:

(1) Determine, and make timely recommendations on, the need and preferences, if any, of displaced persons, for relocation assistance.

(2) Assure that, within a reasonable period of time, prior to displacement there will be available a comparable replacement dwelling.

(3) Supply information concerning federal and state housing programs, disaster loan programs, and other federal or state programs offering assistance to displaced persons.

(4) Provide other advisory services to displaced persons in order to minimize hardships to the person in adjusting to relocation.

(d) The heads of state agencies shall coordinate relocation activities with other project activities and other planned or proposed governmental actions in the community or nearby areas which may affect the carrying out of relocation assistance programs.

History. Acts 1999, No. 99-582.

## § 18-4-8. Contracts.

In order to prevent unnecessary expense and duplication of functions, and to promote uniform and effective administration of relocation assistance programs for displaced persons, a state agency may enter into contracts with any individual, firm, association, or corporation for service in connection with the programs, or may carry out its functions under this chapter through any federal or state agency or instrumentality having an established organization for conducting relocation assistance programs.

History. Acts 1999, No. 99-582.

## § 18-4-9. Appropriations.

Funds appropriated or otherwise available to any state agency for the acquisition of real property or any interest therein for a particular program or project shall be available also for obligation and expenditure to carry out the provisions of this chapter as applied to that program or project.

History. Acts 1999, No. 99-582.

§ 18-4-10 RELOCATION ASSISTANCE/REAL PROPERTY ACQUISITION ACT § 18-4-13

## § 18-4-10. Federal projects.

A displaced person who moves from his or her dwelling as the direct result of federally assisted building or other similar federally assisted code enforcement activities, or a program of rehabilitation or demolition of buildings conducted pursuant to a federally assisted governmental program, is deemed to be a displaced person for the purposes of this chapter.

History. Acts 1999, No. 99-582.

## § 18-4-11. Payments not defined as income.

No payment received by a displaced person under this chapter shall be considered as income or resources for the purposes of determining the eligibility or extent of eligibility of any person for assistance under any state law, or for the purposes of the personal income tax law, corporation tax law, or other tax laws of the state. The payments shall not be considered as income or resources of any recipient of public assistance and the payments shall not be deducted from the amount of aid to which the recipient would otherwise be entitled.

History. Acts 1999, No. 99-582.

## § 18-4-12. Project funds to be used for relocation purposes.

(a) If a project cannot proceed to actual construction because comparable replacement sale or rental housing is not available, and it is determined by the acquiring agency that housing cannot otherwise be made available to the displaced person, the agency may take action necessary or appropriate to provide housing by use of funds authorized for the project.

(b) No displaced person shall be required to move from his or her dwelling on account of any project, unless the agency head is satisfied that replacement housing, in accordance with subdivision (2) of subsection (c) of Section 18-4-7, is available to the person.

History. Acts 1999, No. 99-582.
Editor's notes. The Code Commissioner substituted "subdivision (2)" for "subdivision (3)" in

(b) to correct the reference appearing in Acts 1999, No. 99-582.

## § 18-4-13. Adjustments.

The monetary limits provided in Sections [18-4-4], [18-4-5], and [18-4-6] shall be adjusted to conform to future revisions of corresponding monetary benefits under the federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970.

History. Acts 1999, No. 99-582.

## § 18-4-14. Procedures for acquiring property.

Whenever real property is acquired by a state agency in connection with any programs or projects, the acquisition shall be conducted, to the greatest extent practicable, in accordance with the following:

(1) An agency shall make every reasonable effort to acquire, expeditiously, real property by negotiation.

(2) Real property shall be appraised before the initiation of negotiations, and the owner or his or her designated representative shall be given an opportunity to accompany the appraiser during his or her inspection of the property.

(3) Before the initiation of negotiations for real property, the state agency concerned shall establish an amount which it believes to be just compensation for the property and shall make a prompt offer to acquire the property for the full amount established. In no event shall the amount be less than the approved appraisal of the fair market value of the property by the agency. Any decrease or increase in the fair market value of real property prior to the date of valuation caused by the public improvement for which the property is acquired, or by the likelihood that the property would be acquired for improvement, other than that due to physical deterioration within the reasonable control of the owner, will be disregarded in determining the compensation for the property. The agency concerned shall provide the owner of the real property to be acquired with a written statement and summary of the basis for the amount it established as just compensation. Where appropriate, the just compensation for the real property acquired and for damages to remaining real property shall be separately stated.

(4) No owner shall be required to surrender possession of real property before the state agency pays the agreed purchase price, or deposits with the state court in accordance with applicable law, for the benefit of the owner, an amount not less than the approved appraisal of the fair market value of the property by the agency, or the amount of the award of compensation in the condemnation proceeding for such property.

(5) The construction or development of a public improvement shall be scheduled so that, to the greatest extent practicable, no person lawfully occupying real property shall be required to move from a dwelling, if a replacement dwelling will be available, without at least 90 days' written notice from the agency concerned of the date by which the move is required.

(6) If the agency permits an owner or tenant to occupy the real property acquired on a rental basis for a short term for a period subject to termination by the state agency on a short notice, the amount of rent required shall not exceed the fair rental value of the property to a short-term occupier.

(7) The agency should either advance the time of condemnation or defer negotiations or condemnation and the deposit of funds in court for the use of the owner, or take any other action coercive in nature, in order to compel an agreement on the price to be paid for the property.

(8) If any interest in real property is to be acquired by exercise of the power of eminent domain, the agency concerned shall institute formal

16

condemnation proceedings. No agency shall intentionally make it necessary for an owner to institute legal proceedings to prove the fact of the taking of his or her real property.

(9) If the acquisition of only part of a property would leave its owner with an uneconomic remnant, the agency concerned shall offer to acquire the entire property.

History. Acts 1999, No. 99-582.

## § 18-4-15. Reimbursement of fees; acquired property.

Any state agency requiring real property in connection with any program or project shall, as soon as practicable after the date of payment of the purchase price or the date of deposit into court of funds to satisfy the award of compensation in a condemnation proceeding to acquire real property, whichever is the earlier, reimburse the owner, to the extent the state agency deems fair and reasonable, for expenses he or she necessarily incurred for recording fees, transfer taxes, expenses incidental to conveying the real property to the state agency, penalty costs for prepayment for any preexisting recorded mortgage entered into in good faith encumbering the real property, the pro rata portion of real property taxes paid which are allocable to a period subsequent to the date of vesting title in the state agency, or the effective date of possession of the real property by the state agency, whichever is the earlier.

History. Acts 1999, No. 99-582.

## § 18-4-16. Reimbursement of costs; abandoned proceedings.

Where a condemnation proceeding is instituted by a state agency to acquire real property and the final judgment is that the real property cannot be acquired by condemnation, and the proceeding is abandoned, the owner of any right, title, or interest in real property shall be paid a sum that shall, in the opinion of the court, reimburse the owner for his or her reasonable costs, disbursements, and expenses including reasonable attorney, appraisal, and engineering fees, actually incurred because of the condemnation proceedings. The award of the sums will be paid by the state agency which sought to condemn the property.

History. Acts 1999, No. 99-582.

## § 18-4-17. Reimbursement of costs; declaratory judgment.

Where a declaratory judgment proceeding is instituted by the owner of any right, title, or interest in real property because of use of his or her property in any program or project undertaken by a state agency, the court, rendering a judgment for the plaintiff in the proceeding and awarding compensation for the taking of property, or the Attorney General effecting a settlement of any proceeding, shall determine and award or allow to a plaintiff, as a part of a judgment or settlement, a sum that shall, in the opinion of the court or the

Attorney General, as the case may be, reimburse the plaintiff for his or her reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of the proceeding.

History. Acts 1999, No. 99-582.

## § 18-4-18. Acquisition in structures upon real property.

(a) To the greatest extent practicable, where an interest in real property is acquired an equal interest in all buildings, structures, or other improvements located upon the real property so acquired and which is required to be removed from the real property which is determined to be adversely affected by the use to which the real property will be put shall be acquired.

(b) For the purpose of determining the just compensation to be paid for any building, structure, or other improvement required to be acquired as above set forth, the building, structure, or other improvement shall be deemed to be a part of real property to be acquired notwithstanding the right or obligation of a tenant, as against the owner of any other interest in the real property, to remove the building, structure, or improvement at the expiration of his or her term, and the fair market value which the building, structure, or improvement contributes to the fair market value of the real property to be acquired or the fair market value of the building, structure, or improvement for removal from the real property, whichever is the greater, shall be paid to the tenant therefor.

(c) Payment for the building, structures, or improvements as set forth above shall not result in duplication of any payments otherwise authorized by state law. No payment shall be made unless the owner of the land involved disclaims all interest in the improvements of the tenant. In consideration for any payment, the tenant shall assign, transfer, and release all of his or her rights, title and interest in and to the improvements. Nothing with regard to the above mentioned acquisition of buildings, structures, or other improvements shall be construed to deprive the tenant of any rights to reject payment under this section and to obtain payment for such property interests in accordance with other laws of the state.

History. Acts 1999, No. 99-582.

## § 18-4-19. Rules and regulations.

All state agencies may promulgate rules and regulations as necessary to carry out this chapter.

History. Acts 1999, No. 99-582.

unnecessarily incurred by the defendant because the scope of the take, as originally contemplated by the plaintiff, included property deleted by the court.

## CASE NOTES

**Attorney fees.**

In determining the reasonableness of attorney fees, the court is to consider: the value and nature of the subject matter of the employment; the learning, skill, and labor requisite to its proper discharge; the time consumed; the professional reputation and experience of the attorney; the weight of the attorney's responsibilities; the measure of success achieved; the reasonable expenses incurred; whether a fee is contingent or fixed; the length and nature of the professional relationship; the fee customarily charged in the community for similar services; the likelihood that a particular employment may preclude other employment; and the time limitations imposed by the circumstances or the client. City of Gadsden v. Denson, 590 So. 2d 313 (Ala. Civ. App. 1991).

## § 18-1A-233. Dismissal of action; damages.

If the action is dismissed for any reason, and the defendant has vacated the property under an order of possession or in reasonable contemplation of its taking by the plaintiff, the circuit court, upon demand of the defendant, shall order the plaintiff to (1) deliver possession of the property to the defendant or other person entitled thereto, and (2) pay damages to the defendant as justice requires, including damages for any injury to or impairment of the value of the property not within the reasonable control of the defendant.

History. Acts 1985, No. 85-548.
Evans: Property Rights. — § 40.9, nn. 182,
183.

### COMMENTARY

This section is new to Alabama law and is the same as UEDC Section 1304. This section authorizes an order for restoration of possession and an award of damages in conjunction with a dismissal in cases where the plaintiff took possession before the dismissal was ordered or it was adjudged that plaintiff had no right to take. The damages may include losses sustained as a result of either the taking of possession or the contemplation of it (i.e., vandalism, loss of rentals, etc.). Recovery under this section is in addition to the litigation expenses awarded under section 18-1A-232.

### ARTICLE 14

### RELOCATION ASSISTANCE

### Omitted.

### COMMENTARY

UEDC article 14, Relocation Assistance, has been omitted from this Code. The article describes provisions to comply with the Federal Uniform Relocation Assistance and Real Property Acquisitions Policies Act. State and local agencies in Alabama will need to comply with the requirements of the Federal Act in projects involving federal financial assistance. The effect of omitting the provisions in this Code is that relocation assistance is not required in condemnation cases in Alabama when no federal financial assistance is involved.

# The Relocation Assistance Program
# in
# Alabama



# ALABAMA
# DEPARTMENT OF TRANSPORTATION

# BUREAU OF RIGHT OF WAY



PLAINTIFF'S
EXHIBIT
B

the costs of moving from homes, businesses and farm operations taken for a
highway project to replacement dwellings, businesses and farm operations; and
(b) provide optional and/or incidental payments.

## Who May Receive Moving Costs?

In general, any individual, family, business, farm operation, sign owner or
nonprofit organization displaced by a highway project is entitled to receive a
payment for reasonable and necessary moving expenses provided, of course, that
you are eligible.

## Time Limit on Filing Claim

There is a time limit of eighteen (18) months after the date you move or the
date you receive final payment for your dwelling, whichever is later, to file
a claim for relocation payments. However, you should file your claim as soon
as you have moved.

## What About a Hardship Case?

In hardship cases, arrangements may be made to pay you relocation payments in
advance.

## What About the Cost of Moving My Dwelling?

When you retain your dwelling through the owner retention process, the cost of
moving it onto remainder or replacement land is not eligible for reimbursement
as a part of the cost of moving your personal property. However, if you
choose to use your dwelling as a means of moving your personal property, the
cost of moving your personal property may be reimbursed in accordance with the
fixed schedule contained in this brochure.

## How Soon Will I Receive Payment?

As soon as your fully executed and/or documented claim is received by the
Department, it will be processed and a State Warrant will be issued and
delivered to you. This takes about two to three weeks to process.

### Section B - Actual Moving Costs

## What Moving Costs are Allowed?

Reimbursable moving costs or moving expenses include the reasonable and
necessary costs of dismantling, disconnecting, packing, crating, removing,
loading, transporting, unloading, unpacking, uncrating, reassembling,
reinstalling of personal property, including service charges in connection
with effecting such reinstallations, insurance, losses in moving and
transportation of eligible persons.

Moving costs or moving expenses do not include any additions, improvements,
alterations or other physical changes in or to any structure in connection
with moving personal property nor any loss of or damage to personal property
due to negligence of the displaced person.

Payments for moving costs are limited to actual distance up to 50 miles (80 Kilometers) measured on the basis of the most direct route from the point of move to the point of relocation. Any additional distance charges must be paid by the person being moved. However, payment will be made for any documented reasonable and necessary costs incurred for unloading, uncrating, unpacking and reassembling at the new location without regard to the distance of the move. Where it is determined that relocation cannot be accomplished within the 50-mile (80-Kilometer) area, an exception may be granted to the nearest adequate and available site.

## Storage and Temporary Lodging Costs

If it is necessary for you to store your personal property for a reasonable time, not to exceed twelve months, pending location of replacement property, the reasonable cost of such storage will be eligible as a part of the moving costs. Storage of personal property on the property being acquired or on other property owned or previously leased by the relocatee is not eligible for reimbursement.

When the Department determines that it is necessary for you to obtain temporary lodging and meals, it will pay actual reasonable costs of meals and temporary lodging while the personal property is in transit, if a claim for reimbursement of actual moving costs is submitted.

The Department must approve plans for storage and temporary lodging before you move.

## What About Moving Insurance?

You may be reimbursed the cost of insurance premiums covering the reasonable replacement value of your personal property for loss and damage while in storage or transit.

## Will the Department Pay for Losses in Moving?

The Department will reimburse you for the reasonable replacement value of property lost, stolen or damaged (through no fault or negligence of your own, your agent or employee) in the process of moving where insurance to cover such loss or damage is not available.

## What About Removal and Reinstallation Expenses?

The reasonable and necessary expenses of removal, reinstallation and reestablishment of machinery, equipment, appliances and other items which are not acquired, including reconnection of utilities to such items, which do not constitute an improvement to your replacement realty may be reimbursed, if a claim for reimbursement of actual moving costs is submitted.

Such costs are not applicable to items classified by the Department as real property and retained by you through the owner retention process. Prior to receiving payment for any expenses for removal and reinstallation of such property, you must agree in writing that the property is personalty and that the Department is released from any payment for the property as real property.

The displaced person must permit the Department to make reasonable and timely inspections of the personal property at both the displacement and replacement sites and to monitor the move where it is reasonable to do so. Nonresidential displacees must provide the Department seven (7) days advance written notice of the approximate date of the start of the move or disposition of the personal property. To aid you the Department will provide a self-addressed, stamped postcard to be returned to the Division office not later than seven days prior to the move.

The Department is to obtain, prior to the move, an inventory of the personal property to be moved and also that which is to be sold and/or not moved by the relocatee. Such inventory may be prepared by you and a personal inspection and verification of such items then made by the Department; or, in case you do not furnish such inventory, it will be necessary for the Department to prepare one.

Nonresidential Moves - Reimbursable moving expenses include:

1. Reasonable and necessary costs of packing, crating, unpacking and uncrating of the personal property. Disconnecting, dismantling, removing, reassembling and reinstalling relocated machinery, equipment and other personal property and substitute personal property. This includes connection to utilities available nearby. It also includes modifications to the personal property necessary to adapt it to the replacement structure, the replacement site or the utilities at the replacement site and modifications necessary to adapt the utilities at the replacement site to the personal property. (Expenses for providing utilities from the right of way to the building or improvements are excluded from moving expenses, except as provided in Section E.)

2. Any license, permit or certification required of the displaced person at the replacement location. However, the payment may be based on the remaining useful life of the existing license, permit or certification.

3. Reasonable costs of professional services necessary for planning the move of the personal property, moving the personal property and installing the relocated personal property at the replacement location.

4. Relettering signs and replacing stationery on hand at the time of displacement that is made obsolete as a result of the move.

Other Expenses

Any other moving related expenses that are not listed as ineligible and the Department determines to be reasonable and necessary.

Ineligible Moving and Related Expenses - The following expenses are considered ineligible as "actual moving expenses":

1. Additional operating expenses of a business, farm or nonprofit organization incurred because of operating in a new location;

the displaced person reserved ownership;

3.  Improvements or physical changes to the real property at the replacement site except modifications to the personal property necessary to adapt it to the replacement structure, the replacement site or the utilities at the replacement site, and modifications necessary to adapt the utilities at the replacement site to the personal property;

4.  Interest on loans to cover moving expenses;

5.  Loss of goodwill;

6.  Loss of trained employees;

7.  Loss of business and/or profits;

8.  Personal injury;

9.  Any legal fee or other cost of preparing the application or claim for moving and related expenses, a relocation payment, or for representing the claimant before the Department or Appeals Board;

10. Payment for search cost in connection with locating a replacement dwelling; or

11. Costs for storage of personal property on real property owned or leased by the displaced person.

## What About Personal Property Which is not Moved to the New Site?

Individuals and families are not eligible for reimbursement for the moving cost of personal property which is not moved to the new site.

However, nonresidential displacees may receive a payment for loss of tangible personal property when personal property will not be moved. A tangible loss payment requires a bona fide effort to sell the item(s) but costs of effecting the sale may be reimbursed. Please consult your Right-of-Way agent for details.

## What About Expenses Incurred While Searching for a Replacement Business, Farm Operation or Nonprofit Organization?

As owner of a displaced business, farm operation or nonprofit organization, you may be reimbursed for the actual reasonable expenses in searching for a replacement business or farm operation not to exceed $1000. Such expenses may include transportation expenses, meals, lodging away from home and the reasonable salary or earnings of time actually spent in search, including the fees of real estate agents or real estate brokers to locate the site exclusive of any fees or commissions related to the purchase of such site. Documentation required for searching expenses includes:

Receipted Bills - All expenses claimed except value of time actually spent in search must be supported by original receipted bills.

inventory or other items used in the normal course of the business operation.

3.  Interest on money borrowed to make the move or purchase the replacement property.

4.  Payment to a part-time business in the home or a part-time farm operation which does not contribute materially to the household income.

## Payment Determination

The Relocation Officer must inspect the replacement site with you prior to any improvements or modifications being made in order to determine what repairs, etc., are necessary and reasonable. It is the responsibility of the Relocation Officer to advise you of those items which will be eligible as well as those items which are ineligible. The items will be determined by the State. In some cases, the Relocation Officer must get a ruling from the Central Office.

## Documentation and Claim for Payment

Original receipts and/or other supporting documents will be necessary for all claims under resestablishment expense. It will be your responsibility to furnish the State with the required receipts and documentation to support any claims. Upon completion of the reestablishment of the business, a Claim for Reestablishment Expense will be submitted to the Central Office for approval, along with the supporting receipts and documents.

The Relocation Officers will take pictures of the replacement site both before and after improvements and/or modifications are made. The pictures will be used, along with the other documentation for support when making claims for payment.

## PART III - REPLACEMENT HOUSING PAYMENTS, INCREASED INTEREST PAYMENTS AND INCIDENTAL PURCHASE EXPENSES

### Section A - General Information

## What are These Payments?

As a displaced 180-day owner-occupant, you may be eligible to receive additional payments, the combined total of which may not exceed $22,500, for the additional costs necessary to purchase replacement housing; an amount to compensate you for the loss of favorable financing on your existing mortgage in the financing of replacement housing; and the amount necessary to reimburse you for incidental expense incurred incident to the purchase of replacement housing.

Or, a displaced 90-day owner-occupant may be eligible to receive a payment not to exceed $5250 to rent replacement housing or to make a downpayment, including incidental purchase expenses on the purchase of a replacement dwelling. However, an owner of more than 180 days is not eligible for a downpayment.

-14-

A displaced 90-day tenant may be eligible to receive a payment not to exceed $5250 to rent a replacement dwelling or room, or to make a downpayment including incidental purchase expenses on the purchase of a replacement dwelling.

Increased Mortgage Interest Costs

The payment for increased mortgage interest cost shall be the amount which will reduce the mortgage balance on a new mortgage to an amount which could be amortized with the same monthly payment for principal and interest as that for the mortgage(s) on the displacement dwelling. In addition, payments shall include other debt service costs, if not paid as incidental costs, and shall be based only on bona fide mortgages that were valid liens on the displacement dwelling for at least 180 days prior to the initiation of negotiations.

The mortgage increased interest payment shall be contingent upon a mortgage being placed on the replacement dwelling and the following shall apply to the computation of the payment:

1.  The payment shall be based on the unpaid mortgage balance(s) on the displacement dwelling; however, in the event a smaller mortgage is obtained than the mortgage balance(s) computed in the buydown determination, the payment will be prorated and reduced accordingly. In the case of a home equity loan, the unpaid balance shall be that balance which existed 180 days prior to the initiation of negotiations or the balance on the date of acquisition, whichever is less.

2.  The payment shall be based on the remaining term of the mortgage(s) on the displacement dwelling or the term of the new mortgage, whichever is shorter.

3.  The interest rate on the new mortgage used in determining the amount of the payment shall not exceed the prevailing fixed interest rate for conventional mortgages currently charged by mortgage lending institutions in the area in which the replacement dweling is located.

4.  Purchaser's points and loan origination or assumption fees, but not seller's points, shall be paid to the extent:

    a.  They are not paid as incidental expenses;

    b.  They do not exceed rates normal to similar real estate transactions in the area;

    c.  The agency determines them to be necessary; and

    d.  The computation of such points and fees shall be based on the unpaid mortgage balance on the displacement dwelling, less the amount determined for the reduction of such mortgage balance under this section.

Incidental Purchase Expense Payment

The incidental purchase expense payment will be the amount necessary to reimburse you for those necessary and reasonable costs actually incurred

Time Limit for Filing Appeal

The time limit for filing an appeal is 60 days from the date you receive written notification of the Department's determination on your eligibility or amount of payment.

Appeal Form

The Department will consider a written appeal regardless of form. However, an appeal form is available for your use. Your appeal should set forth therein the facts and reasons you believe you are eligible, if you were ruled ineligible, or why you believe you should receive a payment or greater payment. Any pertinent documents and information should be attached to your appeal and mailed or delivered to the Division Engineer in your area. The Division Engineer will promptly forward the relocation appeal to the Engineer, Bureau of Right of Way, Montgomery, AL.

## PART VI - DEFINITIONS

As used in this brochure, the following words and terms shall have the following meanings unless the context clearly indicates another meaning or different intent:

1.  Displaced Person - Any individual, family, partnership, corporation or association who moves his or her personal property from the real property:

    a.  As a direct result of the Department's acquisition of such real property in whole or in part for a project and includes anyone who moves as the result of a written notice of intent to acquire, or the initiation of negotiations; or

    b.  As a result of a written order from the Department to vacate such property for the project.

    "Acquisition" means the time at which the Department obtains legal possession of the real property at the closing of the transaction or the date of payment of the award into court.

2.  Initiation of Negotiations for the Tract - The delivery of the initial written offer to the owner of the real property, or his representative, of the amount determined to be just compensation for the property to be acquired. Where a person moves after the Department issues a notice of intent to acquire real property, but before delivery of the initial written purchase offer, the "initiation of negotiations" is the date the person moves.

3.  Dwelling - The place of permanent or customary and usual residence. It includes a single-family house; a one-family unit in a multi-family building or multi-purpose property; a unit of a condominium or cooperative housing project; a nonhousekeeping unit; or any other residential unit, including a mobile home.

4.  Business - Any lawful activity, excepting a farm operation, conducted primarily:

property; and for the manufacture, processing or marketing of
products, commodities or any other personal property;

b.    For the sale of services to the public;

c.    By a nonprofit organization that has established its nonprofit
      status under applicable federal or state law; or

d.    For the purpose of moving and related expenses, the erection and
      maintenance of an outdoor advertising display(s), whether or not it
      is located on the premises on which any of the above activities are
      conducted.

Nonprofit Organization - An organization that is incorporated under state
law as a nonprofit organization and exempt from paying federal income
taxes under Section 501 of the Internal Revenue Code (26 USC 501).

Farm Operation - Any activity conducted solely or primarily for the
production of one or more agricultural products or commodities including
timber, for sale or home use, and customarily producing such products or
commodities in sufficient quantity to be capable of contributing
materially to the operator's support.

Mortgage - Such classes of liens as are completely given to secure
advances on, or the unpaid purchase price of, real property under Alabama
law together with the credit instruments, if any, secured thereby.

Owner of Displacement Dwelling - An individual(s) who:

a.    Owns legally or equitably the fee title, a life estate, a 99-year
      lease, or a lease with at least 50 years to run from the date of
      acquisition;

b.    Owns an interest in a cooperative housing project which includes the
      right to occupy a dwelling;

c.    Is the contract purchaser of any of the foregoing estates or
      interests; or

d.    Owns any other interest, including a partial interest, which in the
      judgment of the agency warrants consideration as ownership.

Displacee (Relocatee) - Any person who meets the definition of a
displaced person.

Contributes Materially - During the two taxable years prior to the
taxable year in which displacement occurs or during such other period as
the Department determines to be more equitable, a business or farm
operation:

a.    Had average annual gross receipts of at least $5000;

b.    Had average annual net earnings of at least $1000; or

annual gross income from all sources.

11. <u>Salvage Value</u> - The probable sale price of an item, if offered for sale on the condition that it will be removed from the property at the buyer's expense, allowing a reasonable period of time to find a person buying with knowledge of the uses and purposes for which it is adaptable and capable of being used including separate use of serviceable components and scrap when there is no reasonable prospect of sale except on that basis.

12. <u>State</u> - The State of Alabama or any political subdivision thereof.

13. <u>Stage Agency</u> - Any department, agency or instrumentality of a state or of a political subdivision of a state, or two or more states, or of two or more political subdivisions of a state or states, or any person who has the authority to acquire property by eminent domain under state law.

14. <u>Tenant</u> - A person who has lawful temporary use and occupancy of real property owned by another.

15. <u>Uniform Act</u> - The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 and amendments thereto.

16. <u>Base Monthly Rental</u> - For the displacement dwelling is the lesser of:

   a. The average monthly cost for rent and utilities at the displacement dwelling for a reasonable period prior to displacement as determined by the agency. (For an owner-occupant, use the fair market rent for the displacement dwelling. For a tenant who paid little or no rent for the displacement dwelling, use the fair market rent.);

   b. Thirty (30) percent of the person's average gross household income; or

   c. The total of the amounts designated for shelter and utilities if receiving a welfare assistance payment from a program that designates the amounts for shelter and utilities.

17. <u>Unlawful Occupancy</u> - A person is considered to be in unlawful occupancy if the person has been ordered to move by a court of competent jurisdiction prior to the initiation of negotiations or is determined by the agency to be a squatter who is occupying the real property without the permission of the owner and otherwise has no legal right to occupy the property under state law.

18. <u>Small Business</u> - A business having not more than 500 employees working at the site being acquired or displaced, which site is the location of economic activity. Sites occupied solely by outdoor advertising signs, displays, or devices do not qualify as a business.

19. <u>Taxable Year</u> - Any twelve-month period used by a business or farm operation in filing income tax returns.

20. <u>Utility Costs</u> - Expenses for heat, lights, water and sewer.

-26-

[2] Although a trial court does have residual jurisdiction or authority to take certain actions necessary to enforce or interpret a final judgment, see *Jones v. City of Opelika,* 242 Ala. 24, 4 So.2d 509 (1941), that authority is not so broad as to extend to the actions taken by the trial court in this case, especially the actions taken more than six months after the final judgment. In this case, there is nothing about the original final judgment that makes it ineffectual or that requires amendment by the trial court to resolve the claims made by the parties in the original action. Moreover, the final judgment does not arise from fraud or show some other invalidity that would support the exercise of the court's inherent power to regulate its judgments. *Harrison v. Harrison,* 404 So.2d 330 (Ala.1980); *Doby v. Carroll,* 274 Ala. 273, 147 So.2d 803 (1962); *Holden v. Holden,* 273 Ala. 85, 134 So.2d 775 (1961).

[3, 4] Further, we conclude that the trial court's November orders modifying its final judgment exceeded its authority under Rule 60(b)(6), which is applicable only in exceptional circumstances. See *Hoffman v. Celebrezze,* 405 F.2d 833 (8th Cir.1969); *City of Birmingham v. City of Fairfield,* 396 So.2d 692 (Ala.1981); *State ex rel. Fuller v. Fuller,* 623 So.2d 332 (Ala.Civ.App.1993). A Rule 60(b)(6) motion is an inappropriate means to get relief from a judgment based on an alleged misinterpretation of the judgment. *Transit Casualty Co. v. Security Trust Co.,* 441 F.2d 788 (5th Cir.1971). The trial court's November orders did more than "interpret" the trial court's final judgment—they modified the vested rights of the corporation's creditors, which had been definitely established more than six months earlier.

Our society benefits from a judicial system that recognizes and respects the finality and definiteness of a trial court's "final judgment" deciding what was previously disputed and uncertain. If the rights of litigants were allowed to remain unsettled indefinitely, chaos would surely result. Instead, "the first and most obvious consequence of a judgment is that it establishes an indisputable obligation, and a final judgment definitely fixes the rights and liabilities of the parties in the action as to the matters submitted to the court for decision." 46 Am.Jur.2d *Judgments* § 229 (1969). It has been noted:

> "'Very high among the interests in our jurisprudential system is that of finality of judgments. It has become almost a judicial commonplace to say that litigation must end somewhere, and we reiterate our firm belief that courts should not encourage the reopening of final judgments or casually permit the relitigation of litigated issues out of a friendliness to claims of unfortunate failures to put in one's best case.'"

*United States v. Cirami,* 563 F.2d 26 at 33 (2d Cir.1977), quoted by Chief Justice Torbert in his dissent in *Textron, Inc. v. Whitfield,* 380 So.2d 259 at 262 (Ala.1979). By filing a lien on the corporation's property, the Helmses relied on the certainty of the court's final judgment and simply acted to protect their rights as provided by law.

Accordingly, we hold that the trial court's order lifting the Helmses' lien on the corporation's property and requiring a *pro rata* distribution of the sale proceeds to the corporation's judgment creditors is void. We reverse the trial court's order and remand this cause to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

MADDOX, SHORES, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.



Ronald Alan AVERY and Darlene
Avery, individually and d/b/a
Starmont Water System

v.

MARENGO COUNTY COMMISSION,
et al.

1930520.

Supreme Court of Alabama.

Sept. 2, 1994.

Owners of private water company brought action against county commission,

PLAINTIFF'S
EXHIBIT

tabbies'

C

city sewer board, and their members, seeking relocation expenses as displaced persons under Uniform Relocation Assistance and Real Property Acquisition Policies Act and damages under inverse condemnation theory, arising from defendants' extension of city's water lines into subdivision, which was exclusively serviced by owners' privately owned water system. Defendants moved for summary judgment. The Marengo Circuit Court, No. CV–92–23, Claude D. Neilson, J., granted motions. Owners appealed. The Supreme Court, Houston, J., held that: (1) owners were not entitled to compensation for inverse condemnation; (2) owners were not "displaced persons" entitled to relief under federal Uniform Relocation Assistance and Real Property Acquisition Policies Act; and (3) owners failed to show denial of equal protection in exclusion of water companies from statutes governing acquisition of existing electric system by governmental agency.

Affirmed.

Almon, J., concurred in result.

### 1. Eminent Domain ⊜2(10)

Owners of private water company were not entitled to compensation for inverse condemnation when city and county extended city's water lines into subdivision which was exclusively serviced by owners' privately owned water system, despite contention that such extension resulted in loss of business to company, where city and county had not acquired any of owners' real property or property interests and had not physically taken owners' property or their property rights, and use of water supply by city and county would not interfere with owners' right to use water under easement or with their enjoyment of beneficial use of land. Const. Art. 1, § 23; Art. 12, § 235; Code 1975, § 11–50–5.

### 2. Eminent Domain ⊜271

Owners of private water company were not "displaced persons" entitled to relief under federal Uniform Relocation Assistance and Real Property Acquisition Policies Act by virtue of city and county, with use of federal money, extending city's water lines into subdivision, which was exclusively ser-

viced by owners' privately owned water system, where no real property or property interest of owners had been acquired or taken, owners had not been required to relocate, pipelines providing service to owners' customers had not been altered or disturbed, and owners' right to beneficial use of groundwater beneath their property remained undisturbed. Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, §§ 101(6)(A)(i)(I), 202(a), 42 U.S.C.A. §§ 4601(6)(A)(i)(I), 4622(a).

See publication Words and Phrases for other judicial constructions and definitions.

### 3. Constitutional Law ⊜227
### Eminent Domain ⊜3

Assuming they had standing to challenge constitutionality of statutes governing acquisition of existing electric system by governmental agency, owners of private water company failed to meet burden of presenting substantial evidence to show denial of equal protection in exclusion of water companies from statutes; owners failed to present sufficient evidence that they were similarly situated with private electric utility companies or that exclusion of water utility companies from statutes was arbitrary or that there was no reasonable basis for classification. U.S.C.A. Const.Amend. 14; Code 1975, §§ 37–4–60 to 37–4–65.

### 4. Constitutional Law ⊜240(1)

Mere differences in types of businesses conducted may be sufficient to uphold legislation challenged on equal protection grounds, if differences cause businesses not to be similarly situated. U.S.C.A. Const.Amend. 14.

J. Garrison Thompson of Pitts, Pitts and Thompson, Selma, for appellants.

Mary E. Pilcher of Webb & Eley, P.C., Montgomery, for appellees.

HOUSTON, Justice.

Ronald Alan Avery and his wife, Darlene Avery, individually and doing d/b/a Starmont Water System a/k/a Starmont Water Company (hereinafter collectively referred to as "the Averys"), sued the Marengo County

AVERY v. MARENGO COUNTY COM'N    Ala.  **1349**
Cite as 646 So.2d 1347 (Ala. 1994)

Commission; Freddie Armstead, Leon Glass, Billy Miles, Charles Moore, and James Hopson, individually and in their official capacities as members of the Marengo County Commission; the Sewer Board of the City of Demopolis; and Billy Traeger, Stewart Reynolds, Barney Zanders, Ludie Pearson, and Austin Caldwell, individually and in their official capacities as members of the Sewer Board of the City of Demopolis.[1] The complaint alleged that the defendants were extending the City of Demopolis's water lines into the Starmont subdivision, which was exclusively serviced by the Averys' privately owned water system; the Averys sought relocation expenses, claiming that they were "displaced persons" within the meaning of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970; they sought damages under the theory of inverse condemnation; and they sought a declaration as to the constitutionality of Ala. Code 1975, §§ 37–4–60 through –65. The defendants filed summary judgment motions, which the trial court granted, holding that under Alabama law the Averys were not entitled to recover; that they were not displaced persons entitled to relief under the Uniform Relocation Assistance and Real Property Acquisition Policies Act; and that they were not entitled to compensation for inverse condemnation under Alabama or federal law, because they "did not have real property taken or displaced by the Defendants." The Averys appeal from the summary judgment. We affirm.

The Averys own and operate a private water company known as Starmont Water System, which was the exclusive water source for approximately 43 customers who reside in the Starmont subdivision. The subdivision is located in Marengo County and is approximately three miles south of the corporate limits of Demopolis.

They acquired the water system in 1984 when they purchased the water wells, pipes, pipelines, tanks, meters, and related equipment for $15,000. Since that time, the Averys have maintained, repaired, and im-

proved the system, at a cost of $15,000–$16,000. They have also read the meters and sent out and collected bills from their customers.

The privately owned water system operates under a "certificate of public convenience and necessity" issued by the Alabama Public Service Commission, which regulates the rates at which the Averys may sell their water. Three water lines of the privately owned water system are located on county rights-of-way; and the roads and streets where the mains are located are maintained by Marengo County.

In June 1990, the Marengo County Commission applied to the state for a "Community Development Block Grant" pursuant to the Housing and Community Development Act of 1974, seeking Federal financial assistance in extending the City of Demopolis's water lines to certain unincorporated areas of the County, including Starmont subdivision. In its application, the Commission gave written assurance that it would comply with the requirements of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, as amended. Thereafter, Marengo County received $300,000 in grants to assist it with the costs of design and construction of the water line extension. The construction was approved by the director of the State Highway Department, and it complied with State and Federal requirements, regulations, and other guidelines.

In the fall of 1991, Freddy Armstead, a Marengo County commissioner, advised the Averys that the Demopolis Water Works would be extending its lines into Starmont subdivision. When Armstead asked the Averys how much it would cost the county to purchase the private water company, they told him $90,000. Armstead later informed the Averys that the county would not be purchasing it.

Subsequently, in January 1992, the public water lines for the Marengo County project

1. R & W Construction Company, Inc., which received the construction contract to build the water line extension that is the center of this dispute, was also a defendant in this case. How-

ever, all claims against R & W were dismissed with prejudice, pursuant to a stipulation; therefore, R & W is not a party to this appeal.

were extended south along U.S. Highway 43. The lines were placed in either the State right-of-way or in the county right-of-way and were tapped into the same aquifer as the Starmont Water System. All easements were granted before the construction.

[1] The Averys do not contest the right of the Demopolis Water Board and Marengo County to extend the city water lines into unincorporated areas of the county. In fact, they concede that Ala.Code 1975, § 11-50-5, expressly permits municipalities to extend water lines outside the corporate limits of the municipality. However, according to the Averys, "[t]he problem here ... is that [their] private water system will, for all practical effects, be destroyed as a going business ... [because] the Demopolis Water Works is not subject to taxation ..., nor is it subject to regulation by the Alabama Public Service Commission." They maintain that the extension of municipal water lines into the area served by their privately owned water company under a certificate of convenience and necessity resulted in loss of business to that company and therefore constituted inverse condemnation, in violation of Art. I § 23 and Art. XII § 235 of the Alabama Constitution of 1901. They argue, therefore, that they are entitled to compensation.

In *Alabama Power Co. v. City of Guntersville*, 235 Ala. 136, 143-45, 177 So. 332, 339 (1937), following the reasoning of the United States Supreme Court in *Skaneateles Waterworks Co. v. Village of Skaneateles*, 184 U.S. 354, 22 S.Ct. 400, 46 L.Ed. 585 (1901), the Court stated:

"[T]he proper rule ... is, that just compensation must be made by municipal corporations and other corporations and individuals invested with the privilege of taking property for public use, when, by the construction or enlargement of 'its' works, highways, or improvement, there will be occasioned some direct physical disturbance of a right, either public or private, which the owner enjoys in connection with his property, and which gives it an additional value, and that by reason of such disturbance he has sustained some special damage with respect to his property in

excess of that sustained by the general public.

"It is not here contended by appellant that any of its property has been or will be taken by the defendant city in the construction and operation of its proposed plant, nor that there will be any physical disturbance of its property rights therein, but its sole contention in this respect is: That 'because power subsidized by the United States is available to the proposed municipal system, and because the city is free from taxation and regulation to which plaintiff is subject, the city is able to offer lower rates to citizens of the city than plaintiff can offer consistent with a fair return on its property; and that as a proximate consequence the value of plaintiff's property in such city will be practically or entirely destroyed by the proposed construction of the electric distribution system.'

"It is conceded that the city could have granted the franchise to an individual, or to some corporation to construct an electric plant in the city of Guntersville, and to operate the same in competition with appellant without incurring any liability to the appellant for any diminution of the value of its plant, or in the returns therefrom by reason of the construction and operation of the competing plant, but that the city itself cannot embark upon this undertaking, in competition with the appellant. This for the sole reason, and upon the sole basis, that the city will be able to secure electric power from the United States, and, being free from taxation and regulation to which the appellant is subject, the city will be able to offer cheaper rates, and thereby will be able to take from appellant its customers.

"It may be that competition with the city may prove ruinous to appellant's business in the city of Guntersville, but this is not sufficient to justify a holding that the city cannot proceed in its proposed undertaking, having full legislative authority to that end....

" ....

"As we see it, ... only a question of loss of returns and profits from its business,

incident to competition on the part of the city, is presented. That the city has ample statutory authority to construct and operate a lighting plant, no one will doubt for a moment. That the city purposes, in the construction of its plant, and in the prosecution of its business of supplying electricity to the inhabitants of the city, *to take, injure* or *destroy* the property of the appellant, giving to the terms their proper legal meaning, is not charged. *The embarking upon a competitive business with appellant, without any physical disturbance of appellant's property, or any interference with the right the appellant has to the legal and proper use of the same, is not such an injury to, or destruction of, property as falls within the protection of section 235 of the Constitution.*"

(Some emphasis original; other emphasis added.) See, also, *City of Daphne v. Eastern Shore Wastewater Treatment Facility, Inc.*, 551 So.2d 989 (Ala.1989), where the Court, citing *Alabama Power Co. v. City of Guntersville*, supra, upheld the City of Daphne's extension of sewer treatment services that had been undertaken to the detriment of the plaintiff, a private corporation.

In this case, the defendants have not acquired any of the Averys' real property or property interests; they have not physically taken the Averys' property or their property rights; the groundwater at issue constantly recharges, so that the defendants' use of the water will not deplete the Averys' water supply; and the defendants' use of the water supply will not interfere with the Averys' right to use the water, with their established easement, or with their enjoyment of the beneficial use of the land.

For the foregoing reasons, the trial court properly entered the summary judgment for the defendants on the Averys' claim that they were entitled to compensation for inverse condemnation.

[2] The Averys also maintain that they are displaced persons within the meaning of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4601 et seq., because, they claim, the extension of municipal water lines into the area serviced by their privately owned water company has damaged their business—that the defendants' extraction of water from the supplying aquifer constitutes an acquisition or taking of their real property rights or property interests and thus that they are entitled to relief under the Act.

The Act was enacted to establish "a uniform policy for the fair and equitable treatment of persons displaced as a direct result of programs or projects undertaken by a Federal agency or with Federal financial assistance." 42 U.S.C. § 4621(b). It mandates that whenever the acquisition of real property for a program or project undertaken by a Federal agency will result in the displacement of any person, the head of the displacing agency shall reimburse any displaced person for: 1) actual reasonable expenses in moving himself, his family, his business, or other personal property; 2) actual direct losses of tangible personal property resulting from the move or discontinuation of business; 3) actual, reasonable expenses in searching for a replacement business; and 4) actual reasonable expenses necessary to reestablish a displaced small business at its new site. § 4622(a). A "displaced person" under the Act is a person who moves from real property, or moves his personal property from real property, as a result of the acquisition of real property for a program or project undertaken by a Federal agency or with Federal financial assistance. § 4601(6)(A)(i)(I).

In this case, no real property or property interest of the Averys has been acquired or taken, nor have the Averys been required to relocate. Rather, the land upon which the Averys' well, pumping station, and other business equipment is located remains their property and in their possession to use and promote; the pipelines that provide service to their customers have not been altered or disturbed and need not be removed; and their right to the beneficial use of the groundwater beneath their property remains undisturbed and accessible.

Accordingly, the Averys are not "displaced persons" entitled to relief under the Act, and the trial court properly entered summary judgments for the defendants on this claim.

[3, 4] The Averys further argue that the exclusion of water companies from Ala.Code 1975, §§ 37–4–60 through –65, denies them equal protection under the laws—that those Code sections are discriminatory because, the Averys say, they differentiate between private electrical utility companies and private water systems.

"The basic tenet of the equal protection clause is that all persons similarly situated must be treated equally. It does not, however, require that a statute necessarily apply equally to all persons or require that things different in fact be treated in law as though they were the same."

*McClendon v. Shelby County,* 484 So.2d 459, 464 (Ala.Civ.App.1985), cert. denied, *Ex parte McClendon,* 484 So.2d 465 (Ala.1986), cert. denied, *McClendon v. Shelby County,* 479 U.S. 815, 107 S.Ct. 69, 93 L.Ed.2d 27 (1986). (Citations omitted.)

" 'The equal protection clause does not deprive government of its police powers to pass statutes for the protection of public health, safety, morals, and for the general welfare. In such matters, the legislative body has wide discretion as long as the acts have an equal and uniform application to all persons similarly situated. When the act does not apply equally and uniformly to all who are similarly situated or there is no reasonable basis for the classification, it is in violation of the Fourteenth Amendment to the Federal Constitution.' "

*Ramer v. City of Hoover,* 437 So.2d 455, 468 (Ala.1983) (quoting with approval the trial court's order). Mere differences in the types of businesses conducted may also be sufficient to uphold legislation challenged on equal protection grounds, if the differences cause the businesses not to be similarly situated. See, e.g., *Alamo Rent–A–Car, Inc. v. Sarasota–Manatee Airport Authority,* 825 F.2d 367 (11th Cir.1987), cert. denied, *Alamo Rent–A–Car, Inc. v. Sarasota–Manatee Airport Authority,* 484 U.S. 1063, 108 S.Ct. 1022, 98 L.Ed.2d 987 (1988).

Under the facts of this case, pretermitting the question of the Averys' standing to challenge the constitutionality of §§ 37–4–60 through –65, we must conclude that the Averys failed to meet their burden of presenting substantial evidence to show a denial of equal protection—they failed to present sufficient evidence that they were similarly situated with private electric utility companies or that the exclusion of water utility companies from §§ 37–4–60 through –65, was arbitrary or that there was no reasonable basis for the classification.

For the foregoing reasons, the summary judgments for the defendants are affirmed.

AFFIRMED.

HORNSBY, C.J., and SHORES, STEAGALL, KENNEDY and INGRAM, JJ., concur.

ALMON, J., concurs in the result.



Thomas M. SOUTULLO and Pamela D. Soutullo

v.

COMMONWEALTH LAND TITLE INSURANCE COMPANY.

1930789.

Supreme Court of Alabama.

Sept. 2, 1994.

Insureds brought action against title insurer for negligence, wantonness, and fraudulent suppression of material fact after it was discovered that lot they had purchased did not have access to road. The Circuit Court, No. CV–93–01952, Mobile County, Robert L. Byrd, Jr., J., entered summary judgment in favor of insurer, and insureds appealed. The Supreme Court, Houston, J., held that: (1) although title insurer's curative steps, in securing access easement in favor of insureds after discovering that their parcel was landlocked, may have been sufficient under title insurance policy's limitation-of-liability provision to preclude action on insurance contract,